164 P.3d 686

**STATE of Arizona, Appellee,**

v.

**Steve LE NOBLE, Appellant.**

**No. 1 CA–CR 06–0705.**

Court of Appeals of Arizona, Division 1, Department C.

July 31, 2007.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Cari McConeghy–Harris, Assistant Attorney General, Criminal Appeals Section, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Spencer D. Heffel, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

PORTLEY, Judge.

¶ 1 Steve Le Noble ("Defendant") challenges his conviction and sentence for misdemeanor resisting arrest and contends that he was entitled to a trial by jury. We agree.

### FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 We review the facts in the light most favorable to sustaining the verdict. *See State v. Guerra*, 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989). In October 2005, Defendant was approached by a Phoenix police officer while in the parking lot of a take-out restaurant. He was asked to empty his pockets, and did so voluntarily. The officer reported he saw a small bag containing a powdery substance believed to be methamphetamine while Defendant emptied his pockets. The officer grabbed Defendant, but did not inform Defendant that he was under arrest prior to taking physical action, and a

struggle ensued. The officer, Defendant, and a second officer who joined the struggle fell to the ground, and the second officer received an injury to her hand. Defendant was taken into custody. The alleged drugs that precipitated the arrest were never recovered.[1]

¶ 3 Phoenix police officers located a vehicle in the parking lot they believed was owned by Defendant and performed an inventory search, during which alleged drug paraphernalia was discovered. Defendant was indicted for resisting arrest and possession of drug paraphernalia, both class six felonies. Subsequently, the State reduced each felony charge to a misdemeanor.

¶ 4 At a bench trial, Defendant was acquitted of possession of drug paraphernalia, but was found guilty of resisting arrest. Defendant's sentence was suspended, and he was placed on one year of probation.

¶ 5 Defendant's counsel filed a brief in accordance with *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), and *State v. Leon*, 104 Ariz. 297, 451 P.2d 878 (1969), advising this court that after a search of the entire record on appeal, he found no arguable ground for reversal. This court requested supplemental briefing on whether Defendant was entitled to a jury trial on the resisting charge, and both parties filed responsive briefs.

¶ 6 We have jurisdiction pursuant to Arizona Revised Statutes sections 12–120.21(A)(1) (1992), 13–4031 (2001), and 13–4033(A) (2001).

## DISCUSSION

¶ 7 The issue in this case is whether Defendant had a right to a jury trial for the resisting arrest charge, and if so, whether Defendant knowingly, intelligently, and voluntarily waived that right.

■ ¶ 8 Whether a particular crime is jury eligible is a question of law we review de novo. *Stoudamire v. Simon*, 213 Ariz. 296, 297, ¶ 3, 141 P.3d 776, 777 (App.2006) (citing

---

1. A drug-sniffing dog was used, but no drugs were detected nor were any drugs discovered in

subsequent x-rays taken of Defendant's stomach.

*Urs v. Maricopa County Attorney's Office,* 201 Ariz. 71, 72, ¶ 2, 31 P.3d 845, 846 (App. 2001)).

■ ¶ 9 "[T]he right to [a] jury trial in criminal cases [is] fundamental to our system of justice. . . ." *Duncan v. Louisiana,* 391 U.S. 145, 153, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The Sixth Amendment to the United States Constitution protects that right, stating that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury." Arizona closely guards a defendant's right to a jury trial above and beyond that guaranteed by the Federal Constitution. *Derendal v. Griffith,* 209 Ariz. 416, 419, ¶ 6, 104 P.3d 147, 150 (2005). Article 2, Section 24 of the Arizona Constitution ensures that criminal defendants "shall have the right to . . . a speedy public trial by an impartial jury"[2] and Section 23 ensures that this right "shall remain inviolate."[3]

■ ¶ 10 Article 2, Section 23 has been consistently interpreted as preserving the right to a jury trial for those crimes that were afforded a jury trial prior the adoption of the Arizona Constitution. *Derendal,* 209 Ariz. at 419, ¶ 8, 104 P.3d at 150; *see also Fushek v. State,* 215 Ariz. 274, 276, ¶ 6, 159 P.3d 584, 586 (App.2007); *Benitez v. Dunevant,* 198 Ariz. 90, 93, ¶ 4, 7 P.3d 99, 102 (2000); *Bowden v. Nugent,* 26 Ariz. 485, 488, 226 P. 549, 550 (1924); *Brown v. Greer,* 16 Ariz. 215, 217, 141 P. 841, 842 (1914).

"[W]hen the right to jury trial for an offense existed prior to statehood, it cannot be denied for modern statutory offenses of the same 'character or grade.' "[4] *Derendal,* 209 Ariz. at 419, ¶ 10, 104 P.3d at 150; *see also Fushek,* 215 Ariz. at 276, ¶ 6, 159 P.3d at 586; *Bowden,* 26 Ariz. at 491, 226 P. at 551. Thus, if a crime existed at common law with a right to a jury trial, whether felony or misdemeanor, the right to a jury remains. *Derendal,* 209 Ariz. at 419, ¶ 9, 104 P.3d at 150 ("[O]ur constitution requires that the state guarantee a right to jury trial for any defendant charged with an offense for which a jury trial was granted prior to statehood."); *see also Fushek,* 215 Ariz. at 276, ¶ 6, 159 P.3d at 586.

¶ 11 We look to English common law to determine whether resisting arrest was a common law crime. *See Patterson v. Connolly,* 51 Ariz. 443, 445, 77 P.2d 813, 814 (1938) ("[T]he common law of Arizona included the English common law as amended by statute down to the time of the severing of the union between the colonies and the mother country."); *see also John W. Masury Son v. Bisbee Lumber Co.,* 49 Ariz. 443, 68 P.2d 679 (1937).

¶ 12 This issue was thoroughly addressed by the Maryland Court of Appeals in *Purnell v. State,* 375 Md. 678, 827 A.2d 68, 74 (2003). The court stated that it had affirmed the existence of a common law offense of resisting arrest on several occasions. *Id.* at 73–74

2. Arizona Constitution, Article 2, Section 24 states:

In criminal prosecutions, the accused shall have the right to appear and defend in person, and by counsel, to demand the nature and cause of the accusation against him, to have a copy thereof, to testify in his own behalf, to meet the witnesses against him face to face, to have compulsory process to compel the attendance of witnesses in his own behalf, to have a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed, and the right to appeal in all cases; and in no instance shall any accused person before final judgment be compelled to advance money or fees to secure the rights herein guaranteed.

3. Arizona Constitution, Article 2, Section 23 states:

The right of trial by jury shall remain inviolate. Juries in criminal cases in which a sentence of death or imprisonment for thirty years or more

is authorized by law shall consist of twelve persons. In all criminal cases the unanimous consent of the jurors shall be necessary to render a verdict. In all other cases, the number of jurors, not less than six, and the number required to render a verdict, shall be specified by law.

4. Crimes that are of the same "character or grade" include those common law crimes that may be equated to a statutory offense, although the elements of the crime are not precise matches. *Derendal* suggests that "many newly minted statutory criminal offenses have no precise analog in the common law. . . . We regard a jury-eligible, common law offense as an antecedent of a modern statutory offense when the modern offense contains elements comparable to those found in the common law offense." *Id.* at 419, ¶ 10, 104 P.3d at 150 (citing *Bowden,* 26 Ariz. at 490, 226 P. at 550).

(citing *Preston v. Warden of the Md. House of Corr.*, 225 Md. 628, 169 A.2d 407, 408, (1961) ("A refusal to submit to lawful arrest and resistance to an officer of the law in the performance of his duties constitutes an offense at common law."); R. Perkins, *Criminal Law* 495–97 (2d ed.1969); 4 *Wharton's Criminal Law and Procedure* § 1617 (Anderson 1957)). The court also referenced *Busch v. State*, 289 Md. 669, 426 A.2d 954, 956–57 (1981), which elaborated on *Regina v. Bentley*, 4 Cox C.C. 406, 406–08 (1850), an English case confirming the existence and elements of common law resisting arrest. *Purnell*, 827 A.2d at 74. *Bentley* stated:

> The prisoner was indicted for cutting and wounding with intent *to resist his lawful apprehension:* the evidence showed that the prosecutor, a police constable, went with a brother officer, both being in plain clothes and with two other policemen in uniform, to a public house, and told the prisoner that he wanted him on a charge of highway robbery. He had no warrant, but from information he had received, he thought it was his duty to apprehend the prisoner. The latter asked him for further information relative to the charge, which he refused to give and the prisoner then told him that he would not go to the station-house, unless he was told why, or by what authority, he was apprehended. On the witness immediately proceeding to arrest him, the prisoner violently assaulted and seriously injured him.

*Busch*, 426 A.2d at 956–57 (quoting *Regina*, 4 Cox C.C. at 406–08) (emphasis added).

¶ 13 Likewise, Arizona recognized the common law crime of resisting arrest. In *Stokes v. Territory*, our supreme court addressed a jury instruction on resisting arrest, given prior to statehood, for error. 14 Ariz. 242, 247–48, 127 P. 742, 744–45 (1912). Specifically, the challenged instruction, which was subsequently affirmed, charged the jury:

> If you find, under the instructions given, that Woods was a peace officer, lawfully endeavoring to arrest, or had lawfully ar-

rested, Stokes, and that Stokes was willfully resisting such arrest, knowing Woods to be an officer, then I charge you, as a matter of law, that such resistance was a felony.

*Id.* at 248, 127 P. at 744.

¶ 14 The jury instruction illustrates that the crime of resisting arrest existed in the Arizona common law, it was considered a felony, and was afforded a trial by jury. *See id.* at 248, 127 P. at 744–45; *see also Busch*, 426 A.2d at 957 (quoting *Bentley*, 4 Cox C.C. at 406–08 ("There is, upon the evidence, a sufficient case for the *jury*. I think that, to support a charge of resisting a lawful apprehension, it is enough that prisoner is lawfully apprehended, and it is his determination to resist it." (Emphasis added.))).

¶ 15 In *Spronken v. City Court of the City of Tucson*, we reviewed whether the city court had jurisdiction over a defendant charged with resisting arrest, assault, and tampering with a motor vehicle. 130 Ariz. 62, 63, 633 P.2d 1055 (App.1981). On cross-appeal, the defendant challenged the city court's failure to provide him with a jury trial on the resisting arrest charge. *Id.* We held that the city court had jurisdiction over the charges, but concluded that "[t]he superior court did not err in holding that [defendant] was not entitled to a jury trial on the offense of resisting arrest. The offense carried a maximum penalty of six months in the county jail or a $1,000 fine, or both. The crime does not involve moral turpitude and is not a crime requiring a jury under the common law." *Id.* at 63–64, 633 P.2d at 1056–57. In light of the *Derendal* analysis, the ruling must be reconsidered and we now hold that a jury trial is required for the crime of resisting arrest.

¶ 16 Because we find that resisting arrest was a common law crime afforded a jury trial prior to statehood, we hold that Defendant was entitled to a jury trial, regardless of whether the crime is a misdemeanor or felony.[5] As a result, we turn to the question of whether Defendant waived his right to a jury

---

5. Defendant was acquitted on his second charge, possession of drug paraphernalia, and therefore we need not address that charge. *See Lemke v. Rayes*, 213 Ariz. 232, 236, ¶ 10, 141 P.3d 407,

411 (App.2006) ("The Double Jeopardy Clauses of the United States and Arizona Constitutions prohibit ... a second prosecution for the same offense after acquittal." (Footnote omitted.)).

trial by agreeing to the misdemeanor amendment or not otherwise objecting. Arizona Rule of Criminal Procedure 18.1 provides that where a defendant is entitled to a jury trial, the defendant may choose to proceed with a bench trial only upon waiver. "Before accepting a waiver the court shall address the defendant *personally*, advise the defendant of the right to a jury trial and ascertain that the waiver is knowing, voluntary, and intelligent." Ariz. R.Crim. P. 18.1(b)(1) (emphasis added); *see also State v. Ward*, 211 Ariz. 158, 162–63, ¶ 13, 118 P.3d 1122, 1126–27 (App.2005) ("Although some constitutional rights may be waived without actual knowledge of the right involved, the right to a jury trial is a fundamental right and may not be waived without the defendant's knowledge, and absent a voluntary and intelligent waiver." (Footnote omitted.)).

■ ¶ 17 Here, both the transcript and the court's minute entries are silent about waiver. *See Ward*, 211 Ariz. at 164, ¶ 17, 118 P.3d at 1128 (quoting *State v. Brown*, 210 Ariz. 534, 539, ¶ 12, 115 P.3d 128, 133 (App. 2005) (stating that a defendant's waiver must be clear and indicate an intentional waiver of a known right)). There is no indication in the record that Defendant waived his right to a jury trial. Because there is no "writing or [discussion] in open court on the record," Ariz. R.Crim. P. 18.1(b)(2), or an equivalent, *see State v. Conroy*, 168 Ariz. 373, 376, 814 P.2d 330, 333 (1991), we find no waiver.

■ ¶ 18 Because there was no waiver, we have to determine whether the error was trial error or structural error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶ 17, 115 P.3d 601, 607 (2005) (distinguishing between trial error and structural error); *State v. Ring*,

204 Ariz. 534, 552, ¶ 45, 65 P.3d 915, 933 (2003) (same). Trial errors are characterized as those " 'which occur[ ] during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented.' " *Ring*, 204 Ariz. at 552, ¶ 45, 65 P.3d at 933 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 307–08, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991)). Trial errors are subject to either harmless error or fundamental error review to determine whether reversal is warranted. *Henderson*, 210 Ariz. at 567, ¶ 17, 115 P.3d at 607.

■ ¶ 19 Structural errors, however, are subject to automatic reversal. *See Fulminante*, 499 U.S. at 309–10, 111 S.Ct. 1246; *see also State v. Hickman*, 205 Ariz. 192, 199 n. 7, ¶ 29, 68 P.3d 418, 425 (2003). Structural errors are defined as those errors which affect the "entire conduct of the trial from beginning to end." *Fulminante*, 499 U.S. at 309–10, 111 S.Ct. 1246. The United States Supreme Court has designated only a few limited errors as structural, including a complete failure to provide trial counsel and denial of a public criminal trial. *Ring*, 204 Ariz. at 552–53, ¶ 46, 65 P.3d at 933–34.[6] Just as those errors qualify as structural errors, we find that so too does the complete failure of the trial court to notify and explain to a defendant the right to a jury trial and to obtain a knowing, intelligent and voluntary waiver of that right.[7] *See State v. Maldonado*, 206 Ariz. 339, 342, ¶ 12, 78 P.3d 1060, 1063 (App.2003) (stating that the right to forego a jury trial is reserved to the defendant personally until a knowing, intelligent, and voluntary waiver). The right to a jury trial "affect[s] the framework within which

---

6. *Ring* included a list of those errors that the United States Supreme Court has noted to be structural, including a biased trial judge, complete denial of defense counsel, denial of access to defense counsel during an overnight trial recess, denial of self-representation in criminal cases, defective reasonable doubt jury instructions, exclusion of jurors of the defendant's race from grand jury selection, excusing a juror because of his views on capital punishment and denial of a public criminal trial. *See* 204 Ariz. at 552–53, ¶ 46, 65 P.3d at 933–34 (2003) (citations and footnotes omitted).

7. We note that in *Conroy*, the Arizona Supreme Court addressed the trial court's failure to obtain a jury trial waiver. The court noted that

the [trial] court carefully explained to defendant that he had a right to a jury trial, that by waiving the right he was abandoning the privilege of allowing a jury to determine the facts of his case and agreeing to let the trial court determine the facts and determine his guilt or innocence. We believe this is all that is required to accomplish the intentional waiver of a known right.

168 Ariz. at 376, 814 P.2d at 333.

the trial proceeds," *Fulminante,* 499 U.S. at 310, 111 S.Ct. 1246, and the failure to personally advise a defendant of that right results in a violation of the Arizona and United States Constitutions.

## CONCLUSION

¶ 20 For the aforementioned reasons, we vacate Defendant's conviction and sentence for resisting arrest, and remand for the purpose of determining whether he made a voluntary, knowing, and intelligent waiver of his right to jury trial and proceedings consistent with that determination.

CONCURRING: DONN KESSLER and PATRICK IRVINE, Judges.

